**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
*In re:*                                                     :
                                                             :   Case No. 11-13987 (JLG)
CYNTHIA LEWIS,                                               :   Chapter 13
                                                             :
                                              *Debtor*       :
                                                             :
------------------------------------------------------------ x

## MEMORANDUM DECISION GRANTING APPLICATION OF WELLS FARGO, N.A., AS SERVICING AGENT, FOR RELIEF FROM AUTOMATIC STAY

**A P E A R A N C E S:**

WOODS OVIATT GILMAN LLP
*Attorneys for Wells Fargo Bank, N.A., as Servicing*
*Agent for U.S. Bank National Association, as Trustee,*
*Successor in Interest to Bank of America, National*
*Association, as Trustee, Successor by Merger to LaSalle*
*Bank National Association, as Trustee for Wells Fargo*
*Home Equity Trust Mortgage Pass-Through Certificates,*
*Series 2004-1*
Aleksandra K. Fugate, Esq.
700 Crossroads Building
2 State Street
Rochester, New York 14614

LAW OFFICES OF LINDA M. TIRELLI
*Counsel to Cynthia Lewis*
Linda M. Terelli, Esq.
50 Main Street, 10th Floor
White Plains, New York 10606

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

The matter before the Court is the motion (the "Motion"),[1] filed by Wells Fargo Bank,

N.A. ("Wells"), as servicing agent for U.S. Bank National Association, as Trustee, successor in

interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle

---

[1] *See* Application for Relief from Automatic Stay [ECF No. 34]; Reply to Debtor's Objection (the "Reply") [ECF No. 50].

Bank National Association, as Trustee for Wells Fargo Home Equity Trust Mortgage Pass-Through Certificates, Series 2004-1, as mortgagee, for entry of an order pursuant to section 362(d)(1) of the Bankruptcy Code modifying the automatic stay so that it can pursue its contractual and legal rights under a mortgage encumbering the debtor's principal residence.

Cynthia Lewis, the chapter 13 debtor herein (the "Debtor"), opposes the Motion.[2] As discussed below, the Court finds that Wells has established cause for stay relief under section 362(d)(1), and overrules the Objection. Accordingly, the Motion is GRANTED.

## Jurisdiction

This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## Facts

On August 22, 2011 (the "Filing Date"), the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code in this court. Her "First Amended" chapter 13 plan (the "Amended Plan") [ECF No. 22] was confirmed by order entered December 13, 2012 (the "Confirmation Order") [ECF No. 25]. The Amended Plan is a 60-month plan that calls for the Debtor to make monthly payments to the chapter 13 trustee of $1,157.42 each for the first six (6)

---

[2] *See* Respondent/Debtor's Objection to Motion for Relief From Automatic Stay Filed by Wells Fargo Bank, NA and Request for Sanctions Under 11 U.S.C. 105 and Conditional Motion Requesting the Recovery of Legal Fees and Expenses Under 28 U.S.C. 1927 (the "Objection") [ECF No. 47].

months, and $352.88 each for the remaining fifty-four (54) months. Among Debtor's assets is her principal residence located at 1020 Old Town Road, Trumbull, CT 06611 (the "Property"). It is encumbered by a mortgage (the "Mortgage") that was in default on the Filing Date. As relevant to the Mortgage indebtedness, the plan is a "cure and maintain" plan. That is, by application of section 1322(b)(5) of the Bankruptcy Code, the plan calls for the Debtor to cure the pre-petition Mortgage arrearages and maintain the Mortgage payments for the life of the plan.[3] The Amended Plan fixes the pre-petition arrearages under the Mortgage at $1.00, and provides for full payment of those arrearages, without interest, by the chapter13 trustee, out of the Debtor's monthly plan payments. *See* Amended Plan, Section D, Category 2(a). It also obligates the Debtor, during the pendency of the case, to make "Post-Petition Payments" of $1,143.71, on account of the Mortgage, directly to the "Secured Creditor," "To Be Held In Escrow," during the pendency of the Amended Plan. *See* Plan, Section D, Category 2(b).[4] The plan states that the "Real Party in Interest as [Secured] Creditor is UNKNOWN," but directs the Debtor to make the Post-Petition Payments to Wells, as the "Purported [and Disputed] Mortgage

---

[3] In relevant part, section 1322(b)(5) states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" 11 U.S.C. § 1322(b)(5). As explained in *PNC Mort. Co. v. Dicks*, 199 B.R. 674 (N.D. Ind. 1996):

> [W]hen a default on a mortgage is cured under § 1322(b)(5), the full amount of the creditor's claim is not paid during the Chapter 13 case. "Rather, the debtor preserves the benefit of a longer payment schedule which extends beyond the due date of the last payment under the plan, and the creditor is protected by the exception to discharge for long term debts on which defaults are cured." *In re Chappell*, 984 F.2d 775, 781 (7th Cir.1993) (citing COLLIER at ¶ 1322.09[4] ); *see also Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 922 (3d Cir.1992) (the "cure-and-maintain option" of § 1322(b)(5) "gives the debtor an alternative to cramming down the creditor's claim and paying it off within the chapter 13 plan.").

199 B.R. at 683.

[4] For these purposes, the Amended Plan defines the term "Post-Petition Payments" as meaning "any payment that first becomes due and payable by the Debtor to the Secured Creditor after the filing of the petition pursuant to the Mortgage or Contract." Amended Plan, Section D, Category 2 Definitions. In the Schedules that the Debtor filed herein, the Debtor represents that her monthly expenses include a Mortgage payment of $1,143.71. *See* Schedule J, ¶ 1. [ECF No. 8].

3

Servicer." *Id*. Finally, the Amended Plan provides that if the Debtor pays the pre-petition arrearages and makes all the Post-Petition Payments, the Mortgage "will be reinstated according to its original terms, extinguishing any right of the Secured Creditor to recover any amount alleged to have arisen prior to the filing of the Debtor's petition." *Id*. at Category 2(a)(v).[5]

As initially filed, the Debtor's chapter 13 plan (the "Plan") [ECF No. 9] was identical to the Amended Plan, except that it provided that the pre-petition Mortgage arrearages totaled $60,000, not $1.00. *See* Plan, Section D, Category 2(a)(iv). Wells timely objected to that plan, contending that those arrearages were "significantly higher" than $60,000.00, that Wells would be filing a proof of claim, and that the monthly post-petition payments under the Mortgage, inclusive of escrow payments, totaled $1,884.01. *See* Wells Objection to Confirmation. ¶¶ 4-5 [ECF No. 15].

Wells did not file a proof of claim prior to the January 18, 2012 claims bar date (the "Bar Date") and did not prosecute its Plan objection. On February 8, 2012, the Debtor filed the Amended Plan. Wells did not object or otherwise respond to that plan, and as noted previously, it was confirmed by order entered December 13, 2012. On January 31, 2013, just over one year after the Bar Date, Wells filed a proof of a secured claim in the amount of $327,429.37, which included pre-petition Mortgage arrearages of $142,905.05. *See* Claims Register, Claim No. 6. The Debtor has taken no action with respect to that claim. Nonetheless, she contends that the "untimely proof of claim has no legal effect whatsoever." Obj. ¶ 10.

---

[5] As discussed below, the Debtor denies that she was required to make any payments to Wells. She reads the Amended Plan and Confirmation Order to mandate that she make the Post-Petition Payments into an escrow account, not directly to Wells. The Court finds no merit to that contention. As demonstrated above, that position is not borne out by the plain language of the Amended Plan and Confirmation Order. Moreover, if that is what the Amended Plan required, it no doubt would have provided for the establishment of the escrow account and provided a means for interested parties, like Wells, to assert rights to the proceeds. In any event, that treatment of the Mortgage indebtedness would impermissibly modify the rights of the secured creditor under the Mortgage and run afoul of the Debtor's obligation to maintain the Mortgage payments while the case is pending, all in violation of sections 1125(b)(2) and (5) of the Bankruptcy Code.

4

The Debtor has made all the payments to the chapter 13 trustee called for under the Amended Plan. *See Chapter 13 Trustee's Report of Completion of Amended Plan Payments,* dated November 8, 2016. [ECF No. 36]. However, it is undisputed that she made only one of the sixty (60) monthly Post-Petition Payments required under the Amended Plan.[6] Nonetheless, the Debtor contends that she has "satisfied all plan requirements," and, as such, is entitled to receive her discharge in bankruptcy. *See Debtor's Request for Entry of Discharge and Certification Regarding Amended Plan Completion*, dated October 13, 2016. [ECF No. 36].

## Discussion

Section 362(d)(1) of the Bankruptcy Code provides that on "a request of a party in interest, and after notice and a hearing," the court shall grant stay relief "for cause, including lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Briefly, Wells contends that, as servicing agent for the mortgagee, it has standing to seek stay relief, and that the Debtor's failure to make the monthly Post-Petition Payments called for under the Amended Plan on account of the Mortgage is "cause" to grant the Motion. *See* Motion ¶¶ 5, 8, 9; Reply ¶¶ 3, 10.[7]

It is settled that, as a general rule, mortgage servicers, like Wells, have standing to seek stay relief. *See, e.g., In re Agard*, 444 B.R. 231, 236 n.1 (Bankr. E.D.N.Y. 2011) (citing cases). In substance, the Debtor argues that the rule does not apply here because Wells did not timely file its proof of claim, and because "[Wells] remains a disputed creditor [that] never came forth

---

[6] The Worksheet (defined below) asserts that the Debtor did not make fifty-nine payments, all of which came due after the Filing Date, but indicates that the last payment made on the Mortgage was December 9, 2014.

[7] Wells also notes that it is undersecured since the Mortgage debt totals $419,438.26 and the fair market value of the Property totals $320,000. *See* Motion ¶¶ 6, 7, & Ex. B ¶¶ 5, 6. In support of the Motion, Wells submitted copies of a note endorsed in blank, the Mortgage and a series of assignments of the Mortgage. *See id.* ¶ 1, Ex. A. Wells also included the Relief From Stay – Real Estate and Cooperative Apartments Worksheet (the "Worksheet") required by Local Rule 4001-1. The Worksheet includes a statement regarding the value of the Property (Worksheet ¶ 5) and a statement under oath to the effect that Wells is in possession of the original note and Mortgage. *See id.*, at 6.

5

during the crucial point in the bankruptcy to prove standing to assert a claim." Obj. ¶ 12. However, Wells' failure to file a timely proof of claim has no bearing on its right to participate under the Amended Plan since the Amended Plan and Confirmation Order call for the Debtor to make Post-Petition Payments to Wells (albeit to be held in escrow) on account of the Mortgage. Confirmation Order, Category 2(b). "Under section 1327(a), confirmation of the plan allows a secured creditor to receive distributions to the extent provided in the plan, even if no proof of claim is filed." *In re Dumain*, 492 B.R. 140, 149 (Bankr. S.D.N.Y. 2013) (citing *In re Dennis*, 230 B.R. 244, 252 (Bankr. D. N.J. 1999)). A party that is entitled to receive payments under a chapter 13 plan has standing to seek stay relief if those payments are not made. *In re Binder*, 224 B.R. 483, 491 (Bankr. D. Colo. 1998) ("Where a creditor is permissibly 'paid outside a Chapter 13 plan,' the policies of Chapter 13 and the provisions of the confirmed plan may be best served by granting the creditor relief from automatic stay for post-confirmation defaults."); *cf. Presidential Comm. Fund, Inc. v. Jones, (In re Jones)*, 26 B.R. 142, 143-44 (Bankr. E.D. Penn. 1983) (granting secured creditor's post-confirmation stay relief motion because debtor did not establish that she was not in default of making current payments outside the plan). Thus, because the Amended Plan calls for the Debtor to make Post-Petition Payments to Wells, the Court finds that Wells has standing to file the Motion.

The issues regarding Wells' standing aside, the crux of the Objection is that there are no grounds for granting Wells stay relief because the Confirmation Order "did not afford [that] any payments be made to Wells Fargo during the pendency of the bankruptcy case." *See* Obj. ¶ 24. The Debtor says that under the Amended Plan, she was obligated only to pay $1.00 in full satisfaction of any prepetition arrearages under the Mortgage and was not obligated to make any

6

Post-Petition Payments to Wells. *Id.* at ¶¶ 17-18.[8] She notes that Section D, Category 2(a)(v) of the Amended Plan provides, as follows:

> If Debtor pays the amount(s) specified in section [2(a)](iv) [of the Amended Plan] . . . while making all required Post-Petition Payments . . . , Debtor's mortgage will be reinstated according to its original terms, extinguishing any right of the Secured Creditor to recover any amount alleged to have arisen prior to the filing of Debtor's petition.

*Id.* at ¶ 19 (quoting Amended Plan, Section D, Category 2(a)(v)). From that, the Debtor contends that "[b]ecause Wells Fargo was provided with $1.00 payout on arrears under the [Amended] [P]lan and no direct payments for post petition, the Debtor's mortgage is now reinstated and Wells Fargo has no right to recover any pre-petition debt and the mortgage is deemed current under the Court Order." *Id.* It is not entirely clear, but the Debtor seems to be asserting that the she has modified the Mortgage through the plan, such that notwithstanding her failure to make fifty-nine (59) of the Post-Petition Payments, the Mortgage has been credited and reinstated as if those payments were made.

The Court finds no merit to that contention. Although the Debtor labels Wells a "purported [and disputed] mortgage servicer," she has never formally contested the Mortgage indebtedness and does not contest it in the Amended Plan. To the contrary, in her "cure and maintain" plan, she acknowledges the Mortgage indebtedness and her obligation to pay it and makes provisions to do so. As previously discussed, the Amended Plan calls for the Debtor to pay $1.00 through the Trustee to cure the pre-petition Mortgage arrears, and to make direct monthly post-petition Mortgage payments of $1,143.71, to Wells, the "purported" mortgage servicer, to be held in escrow, during the pendency of the Amended Plan. *See* Amended Plan,

---

[8] Specifically, the Debtor asserts that the "[Amended] [P]lan provided that no post petition payments were to be delivered to Wells Fargo" (*see* Obj. ¶ 17), and that "the plain language of the [Amended] [P]lan provides for only $1.00 payout to Wells Fargo to cure all arrears and bring the Debtor current." *Id.* at ¶ 18.

7

Section D, Category 2(a). It is only if the Debtor makes all those payments that the Mortgage "will be reinstated according to its original terms, extinguishing any right of the Secured Creditor to recover any amount alleged to have arisen prior to the filing of Debtor's petition." *Id.* at Category 2(a)(v). The Debtor failed to make the Post-Petition Payments and, as such, reaps none of the benefits under Amended Plan, Section D, Category 2(a)(v). Thus, contrary to the Debtor's assertion, the Mortgage is not "deemed to be current" and is not reinstated according to its original terms.⁹ The Amended Plan and Confirmation could not, and did not, excuse the Debtor from making the Post-Petition Payments.¹⁰

---

⁹ The Debtor's reading of the Amended Plan contravenes not only the terms of that plan, but also section 1322 of the Bankruptcy Code. Although section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims," it specifically excludes "a claim secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1322(b)(2). Under the Amended Plan, the Debtor did not re-write the Mortgage; nor could she have done so. As the court in *Jutila v. Rodgers (In re Jutila)*, 111 B.R. 621 (W.D. Mich. 1989) explained:

> Chapter 13 grants extraordinary protections to holders of mortgages in the principal residences of debtors. Under most circumstances, Chapter 13 debtors may propose plans that "rewrite" the payment terms of most of their secured and unsecured debts, but a claim that is secured only by mortgage on the debtor's principal residence may be modified only in one way. Section 1322(b)(2) of the Code, 11 U.S.C. § 1322(b)(2), provides that a Chapter 13 plan may modify the rights of secured creditors *other than* those creditors holding a claim secured only by a lien in realty that serves as the debtor's principal residence. The exception to this rule under the Code is that the Chapter 13 plan may cure arrearages arising out of the debtor's home mortgage . . . .

111 B.R. at 624 (citations omitted). Under the Amended Plan the Debtor fixed those arrearages at $1.00 and paid them through the chapter 13 trustee.

¹⁰ Bankruptcy Rule 3002(c) states that, as a general rule, in a chapter 13 case "a proof of claim is timely if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341 of the [Bankruptcy] Code." FED. R. BANKR. P. 3002(c). *See also In re Daniels*, 466 B.R. 214, 217 (Bankr. S.D.N.Y. 2011) (stating that Rule 3002(c) "sets the standard for claims filed in Chapter 13 cases[.]"). Bankruptcy Rule 9006(b)(1) states that a court may extend a party's time to act under the Bankruptcy Rules "where the failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b). However, it provides that a court may enlarge the time for taking action under Rule 3002(c), "only to the extent and under the conditions stated in th[at] rule[.]" FED. R. BANKR. P. 9006(b)(3). "Excusable neglect" is not among the six exceptions to Rule 3002(c). *See* FED. R. BANKR. P. 3002(c)(1)-(6). Thus "[t]he court has no equitable power to extend the time fixed by Rule 3002(c)." *In re Daniels*, 466 B.R. at 217 (quoting 9 *Collier on Bankruptcy,* ¶ 3002.03[1] (15th ed. 2009), at 3002–10). *See also In re Egan*, 526 B.R. 111, 113 (Bankr. S.D.N.Y. 2015); *In re Carlin*, No. 11-11784, 2014 WL 5023653, at *3 (Bankr. S.D.N.Y. October 7, 2014).

As noted, the Debtor did not object to Wells' late filed claim. However, even if that late filed claim were disallowed on that basis (*see* 11 U.S.C. § 502(b)(9)), and the Plan did not obligate the Debtor to make the Post-Petition Payments to Wells (as it does), Wells could look to its lien to satisfy the Mortgage debt. *See Dumain*, 492 B.R. at

8

In her Objection, the Debtor makes much of Wells' timing in filing the Motion. She contends that Wells "sat on its rights in the bankruptcy court and ought not be permitted to now seek assistance from the court it ignored so blatantly for five years to come back now at this late date to seek relief to recapture its alleged collateral." Obj. ¶ 12. Moreover, she asserts that in filing the Motion, Wells is deceiving the Court and the Debtor because it deliberately failed to disclose that: (i) it did not timely file its proof of claim; (ii) it did not object to the Amended Plan notwithstanding being represented by counsel and having notice of the case and all filings in it; and (iii) the Court confirmed the Amended Plan over its objection to the Plan. *Id.* at ¶¶ 14-16. The Debtor also says that the Court should sanction Wells for filing the Motion. *Id.* at pp. 10-12. She argues that "[t]he Gravamen of Wells Fargo's argument that the Debtor failed to make payments for 59 months . . . is at odds with the facts of the case and evidence of clear and deliberate choice of its lawyers to craftly word a motion so as to omit [to] disclose pertinent facts [to] the court." *Id.* at ¶ 13. But that assertion has no merit since, as discussed above, the Amended Plan called for the Debtor to make the Post-Petition Payments to Wells, and it is undisputed that she failed to do so. It is not clear why Wells waited as long as it did to file the Motion and Wells plainly failed to disclose that it did not timely file a claim in this case. However, in filing the Motion, Wells relies on its rights under the Amended Plan and as a party to that plan, not on the basis that it timely filed a proof of claim in this case. *See* Motion ¶¶ 5, 8, 9; Reply ¶¶ 3, 10. As previously discussed, the fact that Wells failed to file its claim timely is of

---

143 ("It is a well-established principle of bankruptcy law that liens pass through bankruptcy proceedings unaffected. Therefore, [a secured creditor] has the option to look to its lien for satisfaction as the sole means of satisfying the debt."). *See also Green Tree Servicing, LLC v. Wilson (In re Wilson)*, 532 B.R. 486, 492 (S.D.N.Y. 2015) ("An allowed claim entitles the claimant to receive payments under a confirmed chapter 13 plan, but has no bearing on the validity of a mortgagee's lien."); *In re Minbatiwalla*, 484 B.R. 104, 118 n.8 (Bankr. S.D.N.Y. 2010) ("[E]ven if Claim #2 is expunged, the mortgagee's lien will ride through the bankruptcy as a secured creditor is not required to file a proof of claim.").

9

no moment since it does not impact its standing to file the Motion or its right to stay relief under section 362(d)(1) of the Bankruptcy Code. Moreover, contrary to the Debtor's assertion, she has not been prejudiced by the timing of the filing of the Motion. The Court finds no grounds for sanctioning Wells.[11] The Debtor's failure to make the Post-Petition Payments under the

---

[11] The Debtor misplaces her reliance on *In re Schuessler*, 386 B.R. 458 (Bankr. S.D.N.Y. 2008), and *In re Carrsow-Franklin*, 524 B.R. 33 (Bankr. S.D.N.Y. 2015), as support for her contention that the Court should sanction Wells for the omissions from the Motion. Both cases involve Wells, but neither supports the Debtor's claim for sanctions.

In *In re Schuessler*, the court sanctioned Wells, as a mortgagee/servicer in a chapter 13 case, for filing a post-confirmation motion for stay relief at a time when the debtors were only a month in arrears, had a significant amount of equity in the underlying collateral, and were on the verge of receiving their discharge and the closing of the case which would have obviated any need to make a stay relief motion. *See* 386 B.R. at 463, 466. The matter was before the court pursuant to the court's order directing Wells to show cause why it should not be sanctioned for filing a stay relief motion "that was troubling on its face because the alleged defaults were minimal and . . . the property in question had equity in excess of $120,000." *Id.* at 462. After hearing the matter, the court found that as a matter of policy, Wells filed stay relief motions in chapter 13 cases if a debtor was two or more payments in default, without regard to any other factors, including the Debtors' pre-petition and post-petition payment history or whether the Debtors had substantial equity in the collateral property. *Id.* at 482-93. The court found that policy to invite abusive conduct and sanctioned Wells for failing to consider highly relevant facts in filing the motion; i.e., equity in the property, barely behind in payments, and, in the court's opinion, an onerous bank policy. *Id.* at 492-93. The court's holding in *In re Schuessler* has no application to this case. Here, the Debtor failed to make fifty-nine Post-Petition Payments and allegedly was approximately $150,000 in arrears under the Mortgage on the Filing Date. Moreover, the Property has no equity value, and the Debtor is not complaining that Wells acted precipitously in filing the Motion. To the contrary, she is complaining that Wells waited too long to file it.

In *In re Carrsow-Franklin*, a debtor challenged the standing of Wells, as an alleged assignee of a mortgage, as part of the debtor's objection to Wells' amended proof of claim. 524 B.R. at 35. Wells, on its own behalf, had filed a proof of claim with back-up including a copy of a promissory note that was specifically endorsed not to Wells but to ABN Amro Mortgage Group, Inc., Wells' predecessor, and an assignment of mortgage (the "Mortgage Assignment") executed three days prior to the filing of the proof of claim by a Wells employee. *Id.* at 36. After debtor's counsel contacted Wells to discuss matters relating to the claim, but before the debtor filed her claim objection, Wells admitted to the debtor that it was merely the loan servicer (*id.* at 36), and amended its proof of claim, solely to include a copy of the promissory note (the "Blank Endorsed Note") that now contained a second endorsement, this time in blank. *Id.* at 37. In objecting to the amended claim, the debtor contended that Wells lacked standing because it filed the claim as if it owned the underlying debt even though it admitted that it was not the owner. *Id.* at 37-38. In addition, it contended that the Blank Endorsed Note was forged, and that Wells manufactured the Mortgage Assignment in an effort to mislead the court and the debtor that the creditor had its own standing to enforce the mortgage. *Id.* at 38.

In sustaining the debtor's objection and disallowing Wells' proofs of claim, the Court first held that the debtor had overcome a Texas state law presumption of authenticity of signatures by raising the differences between the notes attached to Wells' original proof of claim and its amended proof of claim, an assignment of mortgage, and testimony from a Wells representative. *Id.* at 45-49. As a result, the burden to prove the validity of Wells' claim shifted to Wells. *Id.* at 48-49. The Court then found that Wells failed to meet its evidentiary burden to prove the endorsement in blank was not forged. *Id.* at 54. Thus, *Carrsow-Franklin* has no application to the Motion and does not support the Debtor's Objection because that case did not involve sanctions, and even though the court there expressed concern over potential forgery, the case was ultimately one about a failure of evidence and the burden of proof, not

10

Amended Plan is cause to grant Wells stay relief under section 362(d)(1) of the Bankruptcy Code. *See e.g., In re Binder*, 224 B.R. at 491; *Ellis v. Parr (In re Ellis)*, 60 B.R. 432 (B.A.P. 9th Cir. 1985); *In re Smith*, 104 B.R. 695, 700 (Bankr. E.D. Pa. 1989). *See also In re Clark*, 38 B.R. 683, 684 (Bankr. E.D. Pa. 1984) (noting in *dicta* that "cause" under § 362(d)(1) post-confirmation includes "the debtor's default under the plan" or "a failure to make necessary payments outside the plan . . . .").[12]  Moreover, there is good reason to grant the Motion. Except for stating in the Amended Plan that the "Real Party in Interest as Creditor is UNKNOWN" and describing Wells as the "Purported Mortgage Servicer" and "disputed," the Debtor has not taken

---

deceit toward the court. Furthermore, the Debtor has not alleged here that she did not sign the documents Wells states are in its possession in original form and offered in support of the Motion.

[12] The case law cited by the Debtor (*see* Obj. ¶ 26) is not to the contrary. In *Clark*, the court denied a mortgagee's motion for stay relief in a confirmed chapter 13 case, where the cause alleged was the debtor's pre-petition default under the mortgage. 38 B.R. at 684. Although the mortgagee had failed to file a claim, the court reasoned that, post-confirmation, "cause" for stay relief under section 362(d)(1) "may only be predicated on matters occurring after said confirmation." *Id.* at 684. However, the holding in *Clark* is inapplicable since the Motion is not predicated on pre-petition defaults; it is based on the Debtor's failure to make post-confirmation payments required under the Amended Plan. Likewise, the Debtor misplaces her reliance on *In re Jones*, 555 B.R. 869 (Bankr. N.D. Ind. 2016), *In re Macias*, 195 B.R. 659 (Bankr. W.D. Tex. 1996), *In re Schaffer*, 173 B.R. 393 (Bankr. N.D. Ill. 1994) and *In re Humphrey*, 309 B.R. 777 (Bankr. W.D. Mo. 2004). Those cases directly or indirectly support the proposition that a secured creditor does not have cause for stay relief under section 362(d)(1) of the Bankruptcy Code, where a chapter 13 debtor's confirmed plan calls for the trustee to make payments to a secured creditor under the plan, but the trustee refuses to do so because the secured creditor did not file a proof of claim. In those instances, the secured creditor's failure to file a claim bars them from receiving payments under the plan from the chapter 13 trustee. Thus, courts reason that the creditor "is complaining about a self-inflicted wound." *In re Jones*, 555 B.R. at 870 (*citing In re Humphrey*, 309 B.R. at 781 ("[t]he reason [the secured creditor] is not adequately protected is that it is not receiving payments. The reason [the secured creditor] is not receiving payments is that it failed to file a timely claim.") *See also In re Macias*, 195 B.R. 660, n.5 (granting motion to allow late filed secured claim, so that creditor could receive payments from chapter 13 trustee under confirmed plan, but noting in *dicta* that "a creditor could hardly maintain that cause exist[s] for relief for stay where the debtor had made provision for the creditor in the plan and only the creditor's refusal to file a claim prevented it from receiving the adequate protection that had been offered."); *In re Schaffer*, 173 B.R. at 398  (denying motion of secured creditor to allow late filed claim, and noting in *dicta* that to receive payments under a plan, secured creditor must file a claim). But those cases are irrelevant because the payments at issue here are the Post-Petition Payments that the Amended Plan and the Confirmation Order obligate the Debtor to make directly to Wells outside the plan. Finally, the Debtor's citation to *In re Outboard Marine Corp.*, 386 F.3d 824 (7th Cir. 2004) is similarly unavailing. Obj. ¶ 26. At issue there was the effect of an untimely filed unsecured claim in a chapter 7 case, not chapter 13, and whether the untimely filed claim could be deemed timely filed. *Outboard Marine*, 386 F.3d at 826, 828. None of those issues are before the Court in this case.

11

any steps to challenge Wells' standing in the case or to identify the "real" party in interest with respect to the Mortgage. Those matters can best be resolved in the state court.[13]

### Conclusion

Based on the foregoing, the Objection is overruled, and the Motion is GRANTED. Wells is directed to SETTLE ORDER consistent with this Decision.

Dated: New York, New York
        May 5, 2017

/s/ *James L. Garrity, Jr.*
United States Bankruptcy Judge

---

[13] The Objection contains a "Conditional Motion Requesting the Recovery of Legal Fees and Expenses Under 28 USC 1927." *See* Obj. 11-16. The Debtor has not established a right to relief under Section 1927. Accordingly, the Court denies that request. Furthermore, the Debtor also requests discovery from Wells. *See* Obj. pp. 13-15, ¶¶ B – J. Motions for stay relief are summary proceedings, and the Debtor has not articulated any basis that warrants discovery in this matter. *See In re Everton Aloysius Sterling*, 543 B.R. 385, 391 (Bankr. S.D.N.Y. 2015). Accordingly, the Court denies that request as well.